(No. 92-CV-2094-)

*In re* APPLICATION OF JANE DOE

*Opinion filed May 15, 1996.*

JANE DOE, *pro se*, for Claimant.

JIM RYAN, Attorney General (CHARLES A. DAVIS, JR., Assistant Attorney General, of counsel), for Respondent.

OPINION

JANN, J.

This cause is brought before the Court by Jane Doe on behalf of her minor daughter, Joan. Jane seeks reimbursement of medical and counseling bills incurred on behalf of her minor daughter as a result of alleged sexual assaults by the child's father. In an order dated March 26, 1993, the Court denied Claimant's application based

upon a lack of evidence that a violent crime as defined by the Crime Victims Compensation Act (740 ILCS 45/1 *et seq.*), was committed against the victim.

Claimant requested rehearing in a timely manner and hearing was held before Commissioner Turner on October 1, 1993.

Claimant appeared *pro se* and presented evidence to the Court. The facts as presented in the hearing transcript are as follows:

Claimant and her husband, John Doe, were divorced on April 19, 1989. Mrs. Doe was given custody of Joan and her two minor brothers. The children are triplets born on September 23, 1984. The divorce settlement provided that Mr. Doe was to have visitation with the children so long as visitation was supervised by Mrs. Doe or another adult approved by Mrs. Doe.

In the early months of 1992, Joan and her brothers were enrolled in the Life Span Program. Life Span is a domestic violence agency which provides counseling for young children. The children were enrolled in the program by their mother to help them deal with their father's alcoholism and erratic behavior. Lynn James, a children's counselor with Life Span testified as to the events she observed at Life Span. At the beginning of every Life Span meeting the participants were required to sign their names on an attendance sheet. Ms. James and the other counselors notice that, although there was no child named Susan registered for the program, the name Susan continued to appear on the sign-in sheet over a period of several weeks. On February 4, 1992, the counselors figured out that "Susan" was Joan Doe. Ms. James asked Joan who Susan was. Joan told Ms. James that Susan was her friend. Joan was asked if Susan had family problems.

Joan told Ms. James that "her father does things to her that scare her." Ms. James advised Mrs. Doe of this conversation. Mrs. Doe assured Ms. James that Joan had no friends or neighbors named Susan.

Two days later, Ms. James again spoke to Joan about "Susan." Joan said Susan was very scared because Susan's father touched her. Joan proceeded to relate incidents of Susan's father touching her "private parts" when she was in the shower and in her father's bedroom. The child reverted to present tense in describing several of these incidents. Joan drew a picture of Susan for Ms. James which physically matched Joan's appearance. Joan asked her mother to call Ms. James after her next visitation with her father. She told Ms. James "I saw Susan today and Susan's father hurt her today." Ms. James believed that Susan was really Joan and that the seven-year-old had been molested by her father. Susan/Joan had also shown where she had been touched via drawings.

Ms. James contacted DCFS which sent a caseworker to Mrs. Doe's home on February 9, 1992. Joan refused to acknowledge that she had been molested by her father during this interview. A medical exam later that evening proved inconclusive as to signs of penetration. Ms. James stated that Joan had never discussed an incident of full penetration which would be consistent with the physical examination findings. Additionally, Joan told Ms. James she thought going to the hospital was a good idea as she might be "contagious." Joan subsequently told Ms. James that she had told her father about her conversation with Ms. James and that he had stopped hurting her and she (Joan) didn't want to talk about it anymore.

Joan was given another physical examination on February 27, 1992, and another interview at Columbus Hospital. Again, the results were inconclusive and Claimant

was advised that her former husband could not be prosecuted if Joan refused to specifically admit that her father had molested her. It is the opinion of Ms. James that Joan was molested.

Ms. James suggested that Joan would benefit from additional therapy. Mrs. Doe engaged Dr. Susan Babb, a licensed clinical psychologist. Dr. Babb specializes in working with early childhood disorders and adolescents. Although she does not specialize in child sexual abuse, she testified that she has had extensive experience in that area of practice.

Joan began seeing Dr. Babb on March 9, 1992, and was continuing to see her as of the date of hearing. Dr. Babb testified that Joan continued to deny that she was molested when asked directly. However, Joan has also been consistent in providing indirect evidence which Dr. Babb found "compelling" that she was molested by her father, beginning at approximately age three. Joan was also consistent in her therapy with Dr. Babb in lapsing into the first person when relating "Susan's" history of molestation. However, she was fiercely protective of her family as a cohesive unit and unable to directly accuse her father of molestation. Dr. Babb also felt that Joan was seeking approval from her father and felt she had failed him in some way due to his lack of attentiveness. Joan had continued to be an excellent student but had what Dr. Babb described as anxiety-related problems at home. Joan also made drawings which identified the areas which were touched by "Susan's" father. These drawings were consistent with those Joan made for Ms. James and indicated the child had been touched in a sexually explicit manner with her father's penis on her mouth, anus and vagina.

On cross-examination, Dr. Babb stated that in her professional opinion, Joan had been molested but was unable

to verbalize the incidents directly due to her age and the trauma these events had wrought.

Dr. Babb also reviewed a psychological evaluation by Dr. Lynne H. Shebon, Ph.D. Dr. Shebon tested Joan on Dr. Babb's recommendation. Dr. Shebon's report was made part of the record. Dr. Shebon's report did not indicate a finding of sexual abuse. However, she made findings similar to those of Dr. Babb with regard to Joan's anxiety over the divorce and her father's unavailability. It was also noted that Joan felt she was in some way to blame for the break-up of her family. Dr. Shebon recommends that "continued inquiry into the nature of possible threats to Joan's sense of safety is urged."

The State presented no testimony at hearing.

Claimant has provided no direct evidence of physical sexual abuse which would constitute a crime under the Act. The young victim has never directly accused her father of the alleged acts. We cannot assume the alleged crime occurred based upon the evidence available herein.

We note that the allegations herein are of a most serious and heinous nature. If the young victim is able to provide more information as to the alleged assaults resulting in charges against the perpetrator at some later date, she may refile this action any time before she reaches the age of majority.

Claimant has failed to prove that a violent crime as defined by the Act has occurred. This claim does not meet a required condition precedent under the Act.

It is hereby ordered that this claim be, and hereby is denied.